IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUENA VISTA BIOMASS DEVELOPMENT, LLC, a South Dakota limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>ONETO GROUP, INC., a California corporation,<br><br>        Defendant.<br>_____/ | No. Civ. 2:08-CV-01011 JAM DAD<br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |

    This matter came on for a hearing before the Court on June 18, 2008 on Plaintiff Buena Vista Biomass Development, LLC's ("Buena Vista") motion for preliminary injunction.  Defendant Oneto Group, Inc. ("Oneto") opposed the motion.  The Court, having considered the parties' papers in support of and in opposition to the motion for preliminary injunction, as well as the oral argument of counsel, DENIES Buena Vista's motion for preliminary injunction for the reasons set forth below.

I.  BACKGROUND

Plaintiff Buena Vista is a limited liability company in the business of owning and operating electric generating facilities. Compl. ¶ 1.  Defendant is a corporation and the owner of an idle coal/wood waste-fueled electric generation facility and related equipment located in Ione, California (the "Biomass Project"). Id. ¶ 2.  On August 19, 2007, the parties entered into an Option Agreement ("Agreement") under which Buena Vista acquired the "sole and exclusive right and option" to purchase from Oneto all the assets of the Biomass Project.  Compl. ¶ 5.  Under the terms of the Agreement, there was an "Option Period" in which Buena Vista would, among other things, make monthly payments to Oneto before making a $1,255,000 payment to formally exercise its option (the "Option Exercise Payment").  Id. ¶ 7.  The Agreement provided that the Option Period would expire on December 15, 2007.  Id. ¶ 8.  The parties mutually agreed, on two separate occasions, to amend the Agreement to extend the option period from December 15, 2007 to February 15, 2008, and then further to March 31, 2008.  Id.

Buena Vista did not make the Option Exercise Payment on or before March 31, 2008.  Compl. ¶¶ 20-24.  On or about April 9, 2008, Oneto advised Buena Vista that it had entered into an agreement to sell the Biomass Project to Renegy Holdings, Inc. ("Renegy").  Id. ¶ 37.  Renegy subsequently announced that it

intended to close on the purchase of the Biomass Project on or before July 9, 2008.  Id. ¶ 39.  At the hearing on Buena Vista's motion herein, Oneta's counsel informed the Court that the sale to Renegy would not be completed on July 9, 2008.

On May 8, 2008, Buena Vista filed the instant action against Oneto alleging various state law claims, including breach of contract.  Docket at 1.  On May 14, 2008, Buena Vista filed a motion for temporary restraining order.  Docket at 9. On May 15, 2008, Buena Vista's motion was denied without prejudice to its renewal as a motion for preliminary injunction. Docket at 12.  On May 21, 2008, Buena Vista filed its motion for preliminary injunction.  Docket at 14.  Oneta filed its opposition to the motion for preliminary injunction on June 4, 2008. Docket at 18. The motion was heard by the Court on June 18, 2008.

## II. OPINION

A.   Oneto's Corporate Status

As an initial matter, the Court must determine whether Oneto has the capacity to participate in this action.  In this regard, Buena Vista argues that Oneto lacks the capacity to defend against this action because Oneto is a suspended corporation.  In support of its position, Buena Vista proffered evidence demonstrating that the corporate powers, rights and privileges of Oneto have been suspended by the California

Franchise Tax Board since January 2, 2008 pursuant to the provisions of the California Revenue and Taxation Code. Blake Sheppard Aff., Exh. 1. Oneto, however, proffered evidence demonstrating that it was issued a certificate of revivor from the Franchise Tax Board on June 17, 2008, relieving it of suspension or forfeiture. Peter W. Craigie ("Craigie") Decl., Exh. A. According to the California Secretary of State, as of June 17, 2008, Oneto is authorized to exercise all its corporate powers, rights and privileges, and is in good legal standing in the State of California. Craigie Decl., Exh. B

A corporation's capacity to engage in litigation is governed by the law of the state of incorporation. Fed.R.Civ.P. 17(b). Under California law, during the period that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action. Grell v. Laci Le Beau Corp., 73 Cal.App.4th 1300, 1306 (1999); see also Palm Valley Homeowners Ass'n, Inc. v. Design MTC, 85 Cal.App.4th 553, 560 (2000) (a suspended corporation is incapacitated "from participating in any litigation activities" if suspended for failure to pay taxes). A suspended corporation, however, may be sued. Grell, 73 Cal.App.4th at 1306. A suspended corporation may be relieved from suspension if it pays the taxes, penalties and interest owed. Benton v. County of Napa, 226 Cal.App.3d 1485, 1489 (1991). Once payment has been made, the Franchise Tax Board

issues a certificate of revivor.  Id.  The revival of corporate powers validates most litigation activity taken on behalf of the corporation while it was under suspension, including the filing of motions.  Id. at 1490.

Based on the foregoing, the Court finds that Oneto has the capacity to defend against this action.  The Court further finds that the revival of Oneto's corporate powers validates the prior procedural acts taken on behalf of the corporation while its rights were forfeited, including the filing of its opposition to the instant motion.

B.   Preliminary Injunction Standard

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (internal quotation marks omitted) (emphasis in original).  The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties.  Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003).  The Ninth Circuit has articulated two different tests for preliminary injunctive relief.  Under the traditional test, a preliminary injunction is appropriate if the plaintiff demonstrates (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff

if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff and (4) advancement of the public interest (in certain cases).  Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007).  Under the alternative test, a plaintiff must demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor.  Id.  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.  They are not separate tests but rather outer reaches of a single continuum."  Id.

C.   Likelihood of Success on the Merits

    1. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

With respect to Buena Vista's breach of contract claim, the central issue is whether Buena Vista properly exercised its option in compliance with the terms and conditions of the Agreement.  The resolution of this issue turns on how the option was to be exercised. This is a matter of contract interpretation.  As to be expected, the parties advance opposing positions.  Buena Vista contends that it properly exercised its option by communicating to Oneto in writing that it intended to accept the option, and by providing Oneto a commitment letter

6

from its lender evidencing its ability to make the Option Exercise Payment. Oneto, on the other hand, contends that Buena Vista did not properly exercise its option because it did not make the Option Exercise Payment by March 31, 2008. The Court finds Oneto's argument to be persuasive.

"An option is but an offer which expires by its own terms if it is not accepted within the time prescribed." Bekins Moving & Storage Co. v. Prudential Ins. Co., 176 Cal.App.3d 245, 251 (1985). "An option may be viewed as a continuing, irrevocable offer to sell property to an optionee within the time constraints of the option contract and at the price set forth therein." Erich v. Granoff, 109 Cal.App.3d 920, 927 (1980). In other words, an option is "a unilateral contract under which the optionee, for consideration he has given, receives from the optionor the right and the power to create a contract of purchase during the life of the option." Id. An option is a contract, made for consideration, to keep an offer open for a prescribed period, which is transformed into a contract of purchase and sale when there is an unconditional, unqualified acceptance by the optionee of the offer in harmony with the terms of the option and within the time span of the option contract. Id. at 927-28. "It is well settled that when the provisions of an option contract prescribe the particular manner in which the option is to be exercised, they must be

strictly followed." Palo Alto Town & Country Village, Inc. v. BBTC Company, 11 Cal.3d 494, 498 (1974); see also Bekins, 176 Cal.App.3d at 251 (Since the optioner is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option.). While an option is an irrevocable offer, it does not become binding on the optionor until is exercised by the optionee. Palo Alto Town & Country Village, 11 Cal.3d at 502-03. Thus, in order to prevail, Buena Vista must prove that it exercised its option in exact compliance with the terms and conditions of the Agreement.

In this case, the Agreement states in relevant part:

> At any time during the Option Period, after negotiation of the Definitive Agreement, the Lease, and Miscellaneous Property Rights Documents, the Option shall be deemed formally exercised on the date Buena Vista executes the Definitive Agreement. Upon execution of the Definitive Agreement, Buena Vista shall remit payment to Oneto set forth on Exhibit A, less the Remitted Option Payments . . . Upon Option Exercise, Oneto will transfer to Buena Vista the Ownership Interest.

Mark Thompson ("Thompson") Aff., Exh. A at 5. The Agreement further states that "Oneto acknowledges that Buena Vista has disclosed to it that it will need to borrow funds from a third party lender to make [among other things] the required Option Exercise Payment" as defined in Exhibit A. Thompson Aff., Exh. A at 6. Exhibit A to the Agreement, titled, "Option Payment

Schedule, Membership Interest Payment and Conditions," provides that the Option Exercise Payment is $1,255,000, due only in the event of option exercise.  Thompson Aff., Exh. A at 12. Finally, the "Amendment to Option Agreement" states that "[p]ursuant to the Option Agreement [Buena Vista] agreed ... to exercise its option on December 15, 2007 by notifying [Oneto] in writing that it is exercising its option and by depositing $1,500,000 less the total monthly payments made to [Oneto] ..." Thompson Aff., Exh. B.

Based on the foregoing, the Court finds that Buena Vista did not properly exercise its option because it failed to make the Option Exercise Payment by March 31, 2008.  The relevant provisions of the Agreement expressly prescribe that in order for Buena Vista to exercise its option it needed to not only notify Oneto in writing that it was exercising its option, but to also make the Option Exercise Payment within the Option Period.  Indeed, Buena Vista concedes that the Agreement contemplates that "[Buena Vista] would use the Option period to perform due diligence prior to exercising its Option and ... make monthly payments to [Oneto] before making the $1,255,000 payment ... to formally exercise its Option ('Option Exercise Payment')."  Compl. ¶ 7.  Accordingly, because Buena Vista did not make the Option Exercise Payment within the prescribed Option Period, the Court finds that Buena Vista has not shown

that it is likely to succeed on the merits with respect to its breach of contract claim.  The Court is not persuaded by Buena Vista's contention that its March 31, 2008 e-mail, sent at 6:41 p.m., was sufficient to properly exercise its option.  This e-mail did not clearly articulate that Buena Vista intended to exercise its option, nor did it specifically state that Buena Vista was prepared to make the Option Exercise Payment within the Option Period.  Instead, this e-mail referenced an attached letter from a lender outlining "the two-month process [for] attaining the funding necessary for exercise of the Option."  Supp. Aff. Thompson, Exh. 4.

To the extent that Buena Vista argues that Oneto waived its right to object to Buena Vista's attempt to exercise its option, the Court disagrees.  Buena Vista did not proffer any evidence demonstrating that Oneto, by its conduct, waived the requirement that Buena Vista make the Option Exercise Payment by March 31, 2008.  In fact, the evidence before the Court indicates that Oneto informed Buena Vista on March 31, 2008, that this was the last day to exercise its option, and that after this date Oneto was free to accept offers from other prospective buyers.  Emory Wes Sage ("Sage") Decl., Exh. C-1.  On April 8, 2008, Oneto, again, informed Buena Vista that it was free to consider offers from other prospective buyers, and that it had entered into an agreement to sell the Biomass Project to a company from Arizona

(Renegy).  Sage Decl., Exh. C-2.  On April 9, 2008, in response to this e-mail, Buena Vista acknowledged that "this is Oneto's right."  Sage Decl., Exh. C-3.  In light of this exchange, the Court does not find that Oneto waived its right to object to Buena Vista's attempt to exercise its option.

Finally, to the extent that Buena Vista argues that Oneto breached the Agreement and the implied covenant of good faith and fair dealing by failing to perform certain duties under the Agreement, the Court disagrees.  In this regard, Buena Vista asserts that Oneto prevented it from exercising its option by failing to transfer the unencumbered Biomass Project assets into Buena Vista Ione Generation, LLC ("BVI") prior to March 31, 2008,[1] and by failing to negotiate or execute the Definitive Agreement, Lease or other documents (Miscellaneous Property Rights Documents) as required by the Agreement.  The Court is not persuaded that the evidence proffered by Buena Vista in support of these assertions demonstrates that Oneto prevented Buena Vista from exercising its option.

First, even assuming that Oneto breached its duty under the Agreement to transfer the Biomass Project assets into BVI, the Court nonetheless finds that Buena Vista did not present

---

[1] According to Buena Vista, Oneto's transfer of the Biomass Project assets, permits and contracts into BVI-free and clear of all liens and encumbrances-was critical to its ability to raise financing for the Option Exercise Payment.

compelling evidence demonstrating that Oneto failed to transfer the Biomass Project assets into BVI for the purpose of preventing Buena Vista from exercising its option. Contrary to Buena Vista's argument, Oneto's failure to actually transfer the Biomass Project assets into BVI was not the cause of Buena Vista's failure to obtain financing and make the Option Exercise Payment by March 31, 2008.

Second, as to Oneto's alleged failure to negotiate or execute the Definitive Agreement, Lease or other documents (Miscellaneous Property Rights Documents), the Court finds that, contrary to Buena Vista's assertion, the plain language of the Agreement contemplates that both parties, not just Oneto, were responsible for negotiating these documents.  Thus, because Buena Vista did not proffer any evidence demonstrating that Oneto unilaterally refused to cooperate with Buena Vista in diligently negotiating these documents, and because there is no evidence before the Court demonstrating that Oneto's alleged failure to negotiate and execute these documents effectively prevented Buena Vista from exercising its option, i.e., prevented Buena Vista from obtaining financing for the Option Exercise Payment, the Court finds that Buena Vista has not shown that it is likely to succeed on the merits with respect to its contract based claims.

2. Estoppel Claims

Buena Vista argues that Oneto should be estopped from "reneging" on its obligations under the Agreement because Oneto represented to Buena Vista as late as April 3, 2008 that it would honor the option.  However, because Buena Vista presented neither compelling argument nor controlling authority supporting its estoppel claims, the Court finds that Buena Vista has not shown that it is likely to succeed on the merits with respect to these claims.

3. Forfeiture Claim

Buena Vista argues that it is likely to succeed on the merits with respect to its forfeiture claim because the sale of the Biomass Project to Renegy would cause Buena Vista to sustain a forfeiture.  However, because a "forfeiture" cannot be found where there is a failure to exercise an option, see Bekins, 176 Cal.App.3d at 253-54, the Court finds that Buena Vista has not shown that it is likely to succeed on the merits with respect to this claim.

For these reasons, the Court finds that Buena Vista has failed to sustain its burden to make a clear showing that it is likely to prevail on the merits with respect to any of its claims.

D.    Irreparable Injury and Balance of Hardships

Buena Vista argues that it will suffer irreparable harm if the potential sale of the Biomass Project is not enjoined. Specifically, Buena Vista proffers that if the potential sale of the Biomass Project is not enjoined Buena Vista will lose the opportunity to purchase a unique asset, profits and customer goodwill.  Buena Vista further argues that permitting Oneto to proceed with the sale of the Biomass Project to Renegy would jeopardize the very existence of Buena Vista and result in the loss of $480,000 already paid to Oneto.  Buena Vista maintains that the balance of hardships tips sharply in its favor because the only harm that Oneto stands to suffer if the potential sale of the Biomass Project is enjoined is $250,000, the amount Renegy has agreed to pay for the Biomass Project over the amount Buena Vista agreed to pay for the project.

Oneto, for its part, argues that the balance of hardships tips in its favor because it stands to suffer significant financial harm if the potential sale of the Biomass Project to Renegy is enjoined, including lost profit from the sale of the project, income loss from lease revenues, and other costs associated with loans related to the project.  Oneto further argues that it faces the prospect of litigation with Renegy if the potential sale of the Biomass Project is enjoined.

14

To obtain a preliminary injunction, the moving party ordinarily must show "a significant threat of irreparable injury," although there is "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." <u>United States v. Odessa Union Warehouse Co-op</u>, 833 F.2d 172, 174, 175 (9th Cir. 1987).  To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor.  <u>Rodeo Collection, Ltd. v. West Seventh</u>, 812 F.2d 1215, 1217 (9th Cir. 1987).

In this case, Buena Vista has not only made a weak showing of merit, it has also failed to make a very strong showing that the balance of hardships is in its favor.  While the Court recognizes that Buena Vista stands to suffer harm if Oneto eventually sells the Biomass Project to Renegy, the record indicates that Oneto stands to suffer significant financial harm if it is enjoined from selling the Biomass Project to Renegy.

In sum, because Buena Vista has not shown that it is likely to prevail on the merits with respect to any of its claims or that the balance of hardships is in its favor, Buena Vista's motion for preliminary injunction is denied.

//

//

III. ORDER

For all the foregoing reasons, Buena Vista's motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated:  July 2, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE